**UNITED STATES DISTICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Jeanne Thomas**, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>**Walmart Inc.**,<br><br>                    Defendant. | Civ. Action No.<br><br>3:26-cv-00960-SMY<br><br><br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Jeanne Thomas brings this Class Action Complaint and Demand for Jury Trial against Defendant Walmart Inc. ("Walmart" or the "Defendant") to put a stop to its unlawful collection, use, and storage of Plaintiffs' and the putative class ("Class") members' sensitive biometric data, to have Defendant return or destroy the biometric information that it has retained for over three years and for which the initial use is no longer pertinent, and to obtain appropriate consents, among other things.  Plaintiff further seeks statutory damages.   Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, based upon counsel's due diligent investigation, publicly available documents, and conduct and statements of Defendant.

## <u>NATURE OF THE ACTION</u>

1.  Defendant Walmart is one of the largest retailers in the world, with both brick and mortar and on-line stores.  It operates as Walmart US, Walmart International, and Sam's Club.

2.  As part of its operations of its brick and mortar stores, Walmart maintains customer services lines through which consumers can contact a particular store or supercenter, and connect

to one of store's departments, such as the pharmacy, bakery, auto center, and/or place pick up and delivery orders, among other things.

3. The ability to call into a customer service line is a critical part of Walmart's operations and provides essential information to consumers.

4. Unbeknownst to consumers, such as Plaintiff and Class Members, however, when consumers call into a Walmart customer service line, Walmart creates a voice print or biometric identifier which can be used to identify them in the future.

5. Specifically, when a call connects, Walmart's artificial intelligence system records the audio and isolates the speaker's vocal characteristics. The AI then measures the physical and behavioral identifiers of a person voice, such as pitch, cadence, tone and frequency spectrums which enables Walmart to build a unique mathematical template of the caller's voice.

6. Walmart then uses this template to match the unique acoustic profile or template of the user's voice with the voice of a caller to its customer service line, in order to match that voice, and thereby, presumably to prevent fraud when the user and the template fail to match.

7. The call recording and AI tools further evaluate behavioral data, by analyzing real-time shifts in speech, modulation, volume and to perform "emotional tracking" to gauge customer frustration or urgency.

8. Plaintiff and other consumer who call into the Walmart customer service line are told only that "[t]his call and your voice may be recorded for business purposes, including fraud prevention."

9. However, the recording fails to disclose what the other "business purposes" for taking their voice prints are for, or with whom those biometric identifiers are being shared.

10. Walmart's Customer Privacy Notice (Online and In-Store), updated June 18, 2026 ("Privacy Policy"), states under ""What Personal Information Do We Collect"), that Walmart collects biometric information such as voice prints, and that it collects this "personal information" when a consumer "request[s] customer service or contact[s] us".

11. Moreover, the Privacy Policy explicitly states that, "[w]here required by law, Walmart only processes this Sensitive Personal Information with your consent."  The Privacy Policy further states that "[w]hen you speak to customer service we collect your personal information using call recording technology in accordance with applicable law."

12. Contrary to Walmart's Privacy Policy, however, Walmart does not collect or process this personal information in conformance with applicable law in Illinois, the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), and in fact, collected, processed and used that biometric information in violation of BIPA.

13. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics.

14. Despite this law, Defendant disregards its consumers' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Defendant has violated (and continues to violate) BIPA because it did not:

(1) Properly inform Plaintiff and the Class members in writing of the specific purpose for which their biometric identifying voiceprints were being collected, stored, and used, as required by the BIPA;

3

(2) Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their  voice prints, as required by the BIPA, or

(3) Obtain consent to share this biometric information or identifiers with third parties

15.     Defendant's collection and storage of biometric identifiers and/or biometric information exposes consumers to serious and irreversible privacy risks.  For example, if an employee database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

16.     Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; (iii) awarding liquidated damages to Plaintiff and the proposed Class; and (iv) awarding Plaintiff statutory damages for such violations.

## PARTIES

17.     Plaintiff Jeanne Thomas is a citizen of the State of Illinois, and is a consumer who has made telephone calls to Walmart's customer line for its Vandalia Superstore.

18. Defendant Walmart is one of the largest retailers in the world. It is a Delaware corporation with its principal place of business in Bentonville, Arkansas.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because the Defendant is diverse from the named plaintiff, the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are 100 or more members of the Class. Because it is estimated that the Class will have hundreds of members and Defendants' intentional and reckless violations of BIPA are punishable by statutory damages of $5,000 per violation, the amount in controversy is well in excess of $5,000,000.

20.      This Court has personal jurisdiction over Defendant as Defendant maintains at least  stores and outlets in this state, and maintains stores and superstores in this judicial district such that it maintains continuous and systematic contacts with the State of Illinois, so that it as "at home" here and directs corporate activities from the State of Illinois.  Moreover, the wrongful conduct giving rise to this action occurred in this state, and was directed to, and/or emanated from this judicial district and was directed at Illinois residents residing in this judicial district. Walmart is further registered to do business in Illinois.

21.      Venue is proper in this judicial district Defendant does business here, and this is the judicial district in which the wrongdoing occurred.

## FACTUAL BACKGROUND

I.      The Biometric Information Privacy Act.

22.      In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740  ILCS  14/5(b).  Given its relative infancy, an  overwhelming  portion  of the public became weary of this then-growing, yet unregulated technology. See 740 ILCS 14/5.

23.      In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy.  That bankruptcy was alarming to  the  Illinois  Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, which can be linked to people's sensitive financial and personal data— could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most

consumers who had used that company's fingerprint scanners were completely unaware that  the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

24.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. See Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

25.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information.740 ILCS 14/15(b) (emphasis added).

26.    BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

27.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry and fingerprints. See 740 ILCS 14/10.

28.    Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. See id. In this case,

plaintiff and the Class' photographs were taken at Petco in connection with their employment, as a form of a biometric identifier to store in Defendant's database and used to identify that individual. The Privacy Policy further states that, "[w]here required by law, Walmart only processes this Sensitive Personal Information with your consent." 20.      Plaintiff Jeanne Thomas is a citizen of the State of Illinois, and is a consumer who has made telephone calls to Walmart's customer line for its Vandalia Superstore.

29. Defendant Walmart is one of the largest retailers in the world. It is a Delaware corporation with its principal place of business in Bentonville, Arkansas.

**FACTUAL BACKGROUND**

I.     The Biometric Information Privacy Act.

30.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. See 740 ILCS 14/5.

31.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, which can be linked to people's sensitive financial and personal data— could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the

7

scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

32.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. See Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

33.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information.740 ILCS 14/15(b) (emphasis added).

34.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

35.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry and fingerprints. See 740 ILCS 14/10.

36.     Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. See id. In this case, plaintiff

and the Class' photographs were taken at Petco in connection with their employment, as a form of a biometric identifier to store in Defendant's database and used to identify that individual.

37.     BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. See 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

## II.     <u>Walmart Violates the Biometric Information Privacy Act.</u>

38.     By the time BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

39.     Unfortunately, Defendant specifically continues to collect, store, and use its consumers' biometric data in violation of the BIPA.

<u>FACTS SPECIFIC TO PLAINTIFF</u>

40.     Plaintiff Thomas is a consumer.

.

9

41. Plaintiff Thomas is a frequent customer of both the Vandalia Illinois and Effingham Illinois Walmart superstores, where she uses the pharmacy, and has her vehicle serviced by the Walmart auto service center, among other things.

42. Plaintiff Thomas thus periodically calls the customer service line for both stores, in order to, *inter alia*, check on her prescriptions, service her auto, and generally to inquire whether those stores have certain products in stock, and other issues.

43. Upon information and belief, during those customer service telephone calls, Plaintiff Thomas had her voice taken by Walmart's AI and technology and reduced to a voice print template, which was then used to identify her during subsequent telephone calls.

44. Despite having her voice print taken, Defendant never informed Plaintiff of the specific limited purposes for which it collected, stored, or used her biometric identifier, other than to play the automatic message that her voice could be taken for business purposes, including fraud prevention. Defendant never referred her to the Privacy Policy.

45. Plaintiff never signed a written release allowing Defendant to collect or store her voice print nor was she provided a written policy regarding what specific purpose for which her voice print was taken.

46. Plaintiff never consented to having her biometric identifiers or biometric information shared with third parties by Walmart, much less for its profit.

47. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of the BIPA alleged herein.

48. Plaintiff now seeks statutory damages under the BIPA as compensation for the injuries Defendant has caused as well as injunctive or other relief.

## CLASS ALLEGATIONS

### Class Definition

49. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and a Class of similarly situated individuals, defined as follows:

All citizens of the State of Illinois who, within the applicable statute of limitations, had their biometric information collected, captured, received, otherwise obtained, or disclosed by Defendant while residing in Illinois.

50. The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

51. Numerosity: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from hundreds of consumers who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

52. Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a)      whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

b)      whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c)      whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class' biometric identifiers or biometric information;

d)      whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class' biometric identifiers or biometric information;

e)      whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f)      whether Defendant complies with any such written policy (if one exists); and

g)      whether Defendant used Plaintiff's and the Class' fingerprints to identify them, and whether Defendant shared that information for profit.

53.      Adequate Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

54.     Appropriateness: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## CAUSE OF ACTION

### COUNT I

**Violation of 740 ILCS 14/1, et seq.**

**(On Behalf of Plaintiff and the Class)**

55.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

56.     BIPA requires companies to obtain informed written consent from customers before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first:

(1)    informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2)    informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3)    receives a written release executed by the subject of the biometric identifier or biometric information….” 740 ILCS 14/15(b) (emphasis added).

57.    BIPA also mandates that companies in possession of biometric data not share it for profit without prior consent.

58.    Defendant fails to comply with these BIPA mandates.

59.    Defendant is a corporation and thus qualifies as a “private entity” under the BIPA. See 740 ILCS 14/10.

60.    Plaintiff and the Class are individuals who had their “biometric identifiers” collected by Defendant, as explained in detail in Section II. See 740 ILCS 14/10.

61.    Plaintiff and the Class’ biometric identifiers or information based on those biometric identifiers were used to identify them, constituting “biometric information” as defined by the BIPA. See 740 ILCS 14/10.

62.    Defendant violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

63.     Defendant violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifying information was being collected and stored.

64.     Defendant violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose for which their biometric identifiers or biometric information was being collected, stored and used.

65. Defendant violated 740 ILCS 14/15 (c)  and (d)(1) by transmitting, disclosing or re-disclosing Plaintiff's and Class Members' biometric information or biometric identifies without their consent and for profit.

66.     By collecting, storing, using and re-disclosing Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, et. seq.

67.     On behalf of themselves and the Class, Plaintiff seeks:

(A)     Injunctive and equitable relief as necessary to protect the interests of the Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein;

(B)     statutory damages of $1,000 per violation for each of Defendant's negligent violations of the BIPA pursuant to 740ILCS 14/20(1); and

(C)     reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS14/20(3).

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully request that the Court enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as Class Counsel;

B.      Declaring that Defendant's actions, as set out above, violate the BIPA;

C.      Awarding statutory damages of $1,000 to $5,000 for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20(1);

D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

### JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date: July 13, 2026

By_____/s/ Richard R. Gordon
Richard R. Gordon
**GORDON GORDON & CENTRACCHIO, LLP**
200 N. LaSalle Street, Suite 1650
Chicago, IL 60601
(312) 332-5200

16

rrg@ggclaw.com

Lynda J. Grant
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Phone: (212) 292-4441
Fax: (212) 292-4442
lgrant@grantfirm.com

Gary S. Graifman
Melissa R. Emert
**KANTROWITZ, GOLDHAMER,
GRAIFMAN, PEARLMUTTER &
        CABALLO, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Phone: (845) 356-2570
Fax: (845) 356-4335
ggraifman@kgglaw.com
memert@kgglaw.com

*Attorneys For Plaintiff
        and the Proposed Class*

17